```
                IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


PRINCE A. LINTON,

         Petitioner,

v.                             //      CIVIL ACTION NO. 1:04CV57
                                       CRIMINAL ACTION NO. 1:97CR22
                                           (Judge Keeley)


UNITED STATES OF AMERICA,

         Respondent.

                  ORDER AFFIRMING MAGISTRATE JUDGE'S
                  ̲R̲E̲P̲O̲R̲T̲ ̲A̲N̲D̲ ̲R̲E̲C̲O̲M̲M̲E̲N̲D̲A̲T̲I̲O̲N̲
```

On March 25, 2004, while incarcerated at FCI-Elkton in Lisbon,
Ohio, the pro se petitioner, Prince A. Linton ("Linton"), filed a
"Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct
Sentence by a Person in Federal Custody", claiming, on various
grounds, that he had been denied effective assistance of counsel in
violation of his Sixth Amendment rights. (Doc. No. 246.[1]) On July
15, 2004, Linton moved the Court to reopen that petition to include
a claim under Blakely v. Washington, 542 U.S. 296 (2004). (Doc. No.
251.) Following an initial review, on April 29, 2005, United
States Magistrate Judge John S. Kaull issued a Report and
Recommendation ("R&R") recommending that Linton's motion to reopen
be granted but that his § 2255 petition be denied because his
claims lack merit. The Court agrees and, for the reasons that

---

[1] All document numbers refer to Criminal Action No. 1:97CR22.

<u>ORDER AFFIRMING MAGISTRATE JUDGE'S R&R</u>

follow, **AFFIRMS** the Magistrate Judge's R&R, and **DISMISSES WITH PREJUDICE** Linton's petition.

## I. <u>Background</u>

### a. Conviction and Sentence:

On June 12, 1997, a grand jury for the Northern District of West Virginia named Linton in a six-defendant, fourteen-count indictment, charging him in four counts with: Count One – conspiracy to possess with the intent to distribute and to distribute "crack" cocaine; Count Two – aiding and abetting the distribution of 0.24 grams of "crack" cocaine; Count Three – distribution of approximately 0.27 grams of "crack" cocaine; and Count Four – distribution of approximately 0.44 grams of "crack" cocaine.  On September 10, 1997, Linton pled guilty to the aiding and abetting charge in Count Two of the indictment.  During his plea hearing the Court advised Linton of the statutory maximum sentence applicable to the count of conviction, and also that, should the sentence ultimately imposed be more severe than expected, Linton would not have the right to withdraw his guilty plea.

After finding that Linton had knowingly and voluntarily pled guilty to Count Two, the Court scheduled a sentencing hearing for

ORDER AFFIRMING MAGISTRATE JUDGE'S R&R
_____

January 21, 1998.  Linton failed to appear for that sentencing

hearing, however, and remained a fugitive until October 3, 2000,

when he turned himself into authorities.[2]  Thereafter, as described

below, the Court conducted three separate hearings before finally

sentencing Linton on December 19, 2000 to 240 months of

incarceration, the statutory maximum applicable to his count of

conviction.

On October 30, 2000, the Court conducted what was intended to

be Linton's sentencing hearing. It continued that hearing, however,

after determining that Linton's retained counsel had inadequately

prepared Linton for sentencing.[3] The Court rescheduled sentencing

to December 8, 2000, in order to facilitate counsels' schedules and

to ensure defense counsel enough time to thoroughly review all

sentencing-related matters with Linton and secure evidence to

support Linton's challenges to the sentencing recommendations made

_____

[2] It is noted that Linton turned himself in a day after narrowly avoiding
recapture by authorities.

[3] Throughout his case, Linton retained the law firm of Davis & Davis in
Uniontown, Pennsylvania to represent him. While several attorneys from that firm
were involved in the case at various points, attorney Samuel J. Davis (admitted
*pro hac vice*) served as Linton's lead counsel.  At the October 30, 2000 hearing,
however, Mr. Davis was not present.  Instead, another attorney from Davis &
Davis, Nicholas E. Timperio, Jr. (admitted *pro hac vice*), and local counsel J.
Michael Benninger represented Linton.  At the conclusion of the hearing, the
Court determined that Mr. Davis, who represented Linton during his change of plea
hearing, needed to be present for the sentencing.

**ORDER AFFIRMING MAGISTRATE JUDGE'S R&R**

by the Probation Officer in the Presentence Investigation Report ("PSR").[4]

On December 8, 2000, the Court resumed Linton's sentencing. Representing Linton at that hearing were retained counsel Samuel J. Davis and Nicholas E. Timperio, Jr., admitted *pro hac vice*, and local counsel J. Michael Benninger. Assistant United States Attorney Robert H. McWilliams represented the government. Also present were several members of the public.

Because the parties disputed both the defendant's drug relevant conduct and whether he should be subject to a role enhancement as an organizer or leader of a drug conspiracy, multiple witnesses, including many of Linton's codefendants, were called to testify. After hearing the proffered testimony, the Court noted that much of it gave rise to severe credibility concerns, as many witnesses were evasive and had offered testimony that conflicted with their testimony at prior grand jury

---

[4] In the addendum to the PSR, defense counsel objected to the Probation Officer's reliance on "unreliable" historical accounts in calculating the recommended drug relevant conduct, as well as the Probation Officer's recommended 4-level enhancement for Linton's organizational or leadership role in the conspiracy under U.S.S.G. § 3B1.1(a).

**ORDER AFFIRMING MAGISTRATE JUDGE'S R&R**

proceedings and statements made in interviews given to the
government's case agent.[5]

Moreover, during the December 8, 2000 hearing, questions were
raised about possible attempts by members of the public in
attendance to influence witness testimony through eye contact,
nods, and other non-verbal signals in the courtroom. Of even
greater concern was the report of witness Beverly Ross that,
shortly before she testified, one of the public in attendance
walked past her in the hallway and attempted to discuss her
testimony with her. Given these concerns, in conjunction with the
apparent witness credibility issues, the Court put the parties on
notice that it would not conclude the sentencing that day, but
rather, hear all the testimony and have the Probation Officer
conduct an investigation into potential witness intimidation before
proceeding further.

--------

[5] In fact, credibility issues were brought into sharp focus at the
conclusion of the testimony of the first witness, Kenneth Dunn. After Dunn, a
government witness and codefendant of Linton's, was thoroughly examined by both
parties with regard to Linton's drug conduct, the following exchange occurred
upon questioning by the Court:

- Court – Should I believe your testimony here today? If you were
  sitting where I'm sitting, would you believe you?

- Dunn – No.

(December 8, 2000 Hearing Transcript at 32.)

**ORDER AFFIRMING MAGISTRATE JUDGE'S R&R**

On December 19, 2000, the Court conducted the final phase of Linton's sentencing hearing.  Before calculating the then mandatory sentencing guideline range, the Court asked the Probation Officer to report on the results of his witness intimidation investigation. According to the Probation Officer, several, but not all, of the witnesses who testified during the December 8, 2000 hearing, related that they were frightened or otherwise fearful for their safety due to the presence of certain individuals in the courtroom. Witness and codefendant, Merrick Smith, for example, advised the Probation Officer that, in mid-November, 2000, he had participated in a three-way telephone call with Von Gaines, the individual who confronted Beverly Ross outside the courtroom, and Linton in which Linton, and Gaines told Smith to "do what he can with regard to his testimony."  Merrick Smith went on to relate to the Probation Officer that, while he didn't feel a direct threat had been made, the telephone call made him uncomfortable.

Thereafter, the Court took up the disputed issues and, after thorough consideration, sentenced Linton to 240 months of incarceration to be followed by three (3) years of supervised release.  In doing so, it determined that Linton's drug relevant conduct was 423.1 grams of crack cocaine, which  equated to a base

**ORDER AFFIRMING MAGISTRATE JUDGE'S R&R**

offense level 34.    Further, the Court found that two-level

sentencing enhancements applied both for Linton's role in the

offense and also his obstruction of justice, flowing from the

Court's finding of witness intimidation, and that Linton had a

Criminal History Category I.[6]   The Court, therefore, sentenced

Linton within the otherwise applicable guideline sentencing range

of 235 to 293 months by imposing the statutory maximum sentence of

240 months of incarceration.

**b: Appeal**

Following the Court's entry of a Judgment and Commitment

Order, Linton timely filed a Notice of Appeal on December 28, 2000.

Attorney Jeff Harris was initially appointed to act as Linton's

appellate counsel; the Fourth Circuit Court of Appeals, however,

relieved Mr. Harris from representation and appointed Linton's

trial counsel, Davis, to act as appellate counsel on March 12,

2001.[7]

---

[6] Linton's failure to appear for the January 21, 1998 sentencing hearing
and subsequent fugitive status had no impact on his sentencing for Criminal
Action No. 1:97CR22.   Rather, those matters were considered in a separate
criminal action.

[7] During the pendency of his appeal before the Fourth Circuit, Linton moved
the trial court to order the West Virginia State Police Forensic Laboratory to
reveal the process and procedures used to test the physical drug evidence in
Linton's case.  On August 17, 2001, the Court denied that motion. (Doc. No. 172.)
Thereafter, Linton filed a motion for reconsideration of that Order, (doc. no.
175), which was denied on September 24, 2001, (doc. no. 183).  Linton then filed

## ORDER AFFIRMING MAGISTRATE JUDGE'S R&R

On September 5, 2001, by *per curiam* opinion, the Fourth Circuit Court of Appeals affirmed Linton's sentence. (Doc. No. 180.) In doing so, it also granted Linton's motion to file a *pro se* supplemental brief but found the arguments made there to be without merit. On September 20, 2001, the Fourth Circuit issued a notice that its mandate giving effect to its decision would not issue as scheduled because Linton had filed a timely petition for rehearing and petition for rehearing *en banc* with the appellate court. Thereafter, on November 19, 2001, the Fourth Circuit denied Linton's petitions for rehearing, (doc. no. 198), and, on November 21, 2001, issued its mandate giving effect to its September 5, 2001 opinion.[8]

Subsequently, on February 4, 2003, Linton filed a *pro se* Petition for Writ of Certiorari with the United States Supreme Court. That petition was denied on March 24, 2003. (Doc. No. 238.)

_____

a Notice of Appeal with regard to the Court's denial of that motion. (Doc. No. 184.) On May 17, 2002, the Fourth Circuit affirmed the Court's denial of Linton's motion, (doc. no. 207), and, on August 1, 2002, issued its mandate giving effect to that opinion (doc. no. 213).

[8] During this time frame, Linton also filed a "Notice and Petition for Judicial Notice/Request for Assignment & Confession of Error", (doc. no. 200), and "Motion/Petition for Effective Administrative Remedy Notice on Assignment of Error and Petition for Immediate Correction of Prosecutor" (doc. no. 196). On November 26, 2001, the Court denied those motions, finding that they "merely reiterate arguments raised and rejected in [Linton's] appeal." (Doc. No. 201.)

ORDER AFFIRMING MAGISTRATE JUDGE'S R&R

**c. Federal Habeas Corpus – 28 U.S.C. § 2255**

After the denial of Linton's initial habeas corpus petition without prejudice as premature on January 14, 2003, (doc. no. 221), Linton filed this § 2255 petition on March 25, 2004, (doc. no. 246). Thereafter, on July 15, 2004, he filed a motion to supplement his § 2255 petition with a claim based on the Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004). (Doc. No. 251.)

On April 29, 2005, Magistrate Judge Kaull issued his R&R recommending the denial of Linton's claims and the dismissal of his petition. Linton then filed objections to that R&R on May 18, 2005, and it is those objections that the Court now takes up.

## II. **Linton's § 2255 Petition**

Linton's petition alleges several claims of ineffective assistance of counsel relating to the representation his attorney Samuel J. Davis, provided at various stages of the underlying criminal proceedings.[9] Specifically, Linton asserts that Davis was "ineffective" because he failed to (1) file a petition for writ of certiorari, (2) properly argue against the § 3C1.1 sentencing

---

[9] As noted previously, Mr. Davis represented Linton as retained counsel for all pre- and post-plea proceedings before the district court, and as appointed counsel for matters on appeal.

<u>**ORDER AFFIRMING MAGISTRATE JUDGE'S R&R**</u>

enhancement, (3) correctly advise the petitioner about the potential sentence, (4) seek drug retesting, (5) present a viable defense to refute the drug quantity determination, and (6) object to the government's breach of the plea agreement. (<u>See</u> R&R at 2-3.) Linton's petition also seeks relief under <u>Blakely v. Washington</u> for his conviction and sentence which became final on March 24, 2003.

### III. <u>Magistrate Judge's R&R</u>

In his R&R, Magistrate Judge Kaull thoroughly analyzed each of Linton's requested grounds for relief and found that none of them warranted further proceedings. He found no support for Linton's Sixth Amendment ineffective assistance of counsel claims, and found further that the relief authorized by the Supreme Court's decision in <u>Blakely</u> and <u>United States v. Booker</u>, 543 U.S. 220 (2005) does not apply retroactively to cases on collateral review.

More specifically, with regard to Linton's ineffective assistance of counsel claims, Magistrate Judge Kaull found that Davis's failure to timely file a petition for writ of certiorari was not ineffective because "the failure to file a petition for discretionary review cannot constitute cognizable ineffective assistance of counsel." (R&R at 5)(citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 752-753 (1991)); <u>Wainright v. Torna</u>, 455 U.S. 586 (1982);.

<u>ORDER AFFIRMING MAGISTRATE JUDGE'S R&R</u>

Next, he found that Linton's counsel had not improperly failed to defend against the Court's imposition of a 2-level obstruction of justice enhancement at sentencing. Further, he found that Linton's claim that Davis erroneously advised him that his sentencing range would be 1 to 3 years, and that he would not be exposed to a significant relevant conduct determination, was without merit because: (1) Linton was apprised of the statutory maximum sentence for his count of conviction at his change of plea hearing and thereafter stated that he understood that his guideline sentence could not be determined until the Probation Officer prepared a PSR; and (2) at no time during the extensive sentencing proceedings did Linton advise the Court that one of his attorneys had promised that he would receive a sentence of only 1 to 3 years.

Magistrate Judge Kaull also found Linton's claim that his attorney was ineffective because he failed to request that the physical drug evidence be retested after being notified of irregularities at the testing laboratory lacked merit because Linton had pled guilty to aiding and abetting the distribution of crack cocaine, and the vast majority of his relevant conduct was determined from historical as opposed to physical evidence. Likewise, he found that Linton's attorney had not failed to

<u>ORDER AFFIRMING MAGISTRATE JUDGE'S R&R</u>

adequately challenge the reliability of the historical evidence relied on by the Court to determine relevant conduct because a sentencing court may consider any relevant and reliable evidence to determine relevant conduct, <u>see</u> <u>United States v. Bowman</u>, 926 F.2d 380, 381 (4th Cir. 1991), and because "[t]he sentencing court may consider quantities of cocaine not specified in the indictment, when they result from the same course of conduct or a common scheme or a plan, as the offense of conviction." <u>United States v. McNatt</u>, 931 F.2d 251, 258 (4th Cir. 1991)(citing <u>United States v. Williams</u>, 880 F.2d 804 (4th Cir. 1989)).

The magistrate judge further found that Linton's asserted ineffective assistance of counsel claim based on his attorney's failure to challenge evidence produced by the government in breach of the parties' plea agreement was similarly without merit.  While Linton argues that the government should have been constrained to introducing only evidence related to the drug conduct charged specifically in Count Two of the indictment, Magistrate Judge Kaull found that the parties' plea agreement did not contain such a stipulation, and that Linton had stated under oath that his plea was not the result of any promise except those contained in that agreement.

ORDER AFFIRMING MAGISTRATE JUDGE'S R&R

Finally, the magistrate judge concluded that Linton's ineffective assistance claim alleging that Davis had failed to move to withdraw his plea when requested to do so was meritless.  Linton appeared before the Court three different times during the sentencing process, and addressed the Court at length during the October 30, 2000 hearing.  At no time did he indicate that he wished to withdraw his guilty plea, and neither of the attorneys present for Linton's October 30, 2000 hearing indicated that he wished to withdraw his plea.

In sum, Magistrate Judge Kaull found that none of Linton's claims had merit and recommended their dismissal.

## IV. Linton's Objections

On May 18, 2005, Linton filed his objections to Magistrate Judge Kaull's R&R. Before addressing the specific claims, Linton first objected to the magistrate judge's recommended summary dismissal of his § 2255 petition without requiring the government to respond to the allegations in his petition.  He asserts that "the motions, files and records do not conclusively show that the Petitioner is entitled to no relief." (Objections at 6.) Therefore, Linton argues, pursuant to Rule 4(b) of the rules governing § 2255 proceedings, the magistrate judge should have

ordered the government to respond to his allegations.  Moreover,

given the liberality with which the Court must view his *pro se*

pleadings, <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), he argued that

the Court must hold an evidentiary hearing to properly resolve the

issues of material fact raised in his petition. <u>See</u> <u>U.S. v. Essig</u>,

10 F.3d 976 (3rd Cir. 1993)("Generally, if a prisoner's § 2255

petition raises an issue of material fact, the district court must

hold a hearing to determine the truth of the allegations.").

Beyond the general objection to the recommended summary

dismissal of his petition, Linton also objects to the recommended

dismissal of his specific claims.[10]  First, he argues that, while

acting as appointed appellate counsel, Davis, "misled" him into

believing that a Petition for Writ of Certiorari to the Supreme

Court would be timely filed on his behalf, and that it was only

after the deadline for filing had passed that Davis informed Linton

that he had decided not to file one.  Linton supports this

assertion by attaching to his petition a series of letters between

himself and Davis that clearly set forth the scenario he describes.

---

[10] The Court notes that in both his petition and objections to the R&R,
Linton asserts only that attorney Samuel J. Davis's representation was
ineffective.  Nowhere, does he bring claims against the other counsel, namely
Nicholas E. Timperio, Jr. and J. Michael Benninger, who actively represented him
during the sentencing phase of the proceedings as co-counsel to Mr. Davis.

ORDER AFFIRMING MAGISTRATE JUDGE'S R&R

Further, while noting the continued validity of the <u>Torna</u> holding,

Linton argues that, under the auspices of the Criminal Justice Act

of 1964 ("CJA"), 18 U.S.C. § 3006A, and the Fourth Circuit plan

implementing the CJA, he was entitled to representation at all

phases of his litigation and appeal, including the filing of a

petition for writ of certiorari. <u>Proffitt v. United States</u>, 549

F.2d 910 (4th Cir. 1976), <u>cert. denied</u>, 429 U.S. 1077 (1977).

Thus, Linton asserts, Davis's assistance was ineffective because he

failed to file such a petition after representing that he would.

Next, Linton asserts that Davis could have effectively argued

against a USSG § 3C1.1 obstruction enhancement at sentencing by

arguing that the required scienter for such a finding was not

established. Specifically, USSG § 3C1.1 requires, *inter alia*, that

the defendant act wilfully in obstructing or attempting to obstruct

justice, and Linton contends that the record does not support a

finding that he wilfully participated in any acts of witness

intimidation. Thus, he concludes, because Davis did not argue

against the enhancement on this ground or challenge the enhancement

on appeal, he was ineffective.

Linton also reiterates his contention that Davis incorrectly

advised him prior to entering a plea to the Count II distribution

<u>ORDER AFFIRMING MAGISTRATE JUDGE'S R&R</u>

charge that he would face a 1 to 3 year period of incarceration and showed him erroneous statutory authority to corroborate that advice. (Linton Petition at 32.) Linton asserts that Davis's pre-plea promises rendered Davis's assistance ineffective and thrust the validity of Linton's guilty plea before the Court into question. As such, Linton seeks an evidentiary hearing under § 2255 to resolve the question of fact raised by his claims.

Further, Linton objects to Magistrate Judge Kaull's recommendation that his attorney was not ineffective for failing to seek a court order to retest the drugs in his case. Given that irregularities were known to exist at the testing laboratory, Linton argues that retesting should have been done to conclusively determine whether the physical evidence in the case was indeed a controlled substance.

Linton also objects to the recommended dismissal of his ineffective assistance claim relating to his attorney's alleged failure to adequately challenge the historical drug evidence presented to the Court at sentencing. He asserts that Davis failed to provide the Court with known information regarding certain witnesses; that information, he contends, would have impacted the Court's credibility determinations and undermined the indicia of

ORDER AFFIRMING MAGISTRATE JUDGE'S R&R

reliability it attached to certain testimony in violation of due process.

In his objections, Linton also reiterates his claim that his attorney failed to challenge the government's breach of the plea agreement because the 0.24 grams of drug weight listed in the count of conviction should be construed as an implied stipulation as to relevant conduct which his attorney did not later argue to uphold. Linton cites U.S. v. Gilchrist, 130 F.3d 1131 (3rd. Cir. 1997), in support of his claim, and argues that the government "hoodwink[ed]" him by debriefing witnesses who attributed drug weight to him following the entry of his plea which, in effect, altered his reasonable understanding of the plea.

In Linton's last objection to the magistrate judge's recommended dismissal of his ineffective assistance claims, he asserts that Davis erred by not moving the Court for the withdrawal of Linton's plea after Linton repeatedly asked him to do so. Again, Linton asserts that his claim raises a material question of fact sufficient to avoid summary dismissal.

Finally, in part B of his objections, Linton engages in a lengthy analysis of why his claim under Blakely and Booker should not be dismissed.

---

### ORDER AFFIRMING MAGISTRATE JUDGE'S R&R

### V. __Standard of Review__

The Court will review *de novo* any portions of the magistrate judge's Report and Recommendation to which a specific objection is made, Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983), and the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the prisoner does not object. Id.

### VI. __Analysis__

### a. Propriety of Summary Dismissal

Pursuant to 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  Further:

> Unless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

Id.  Thus, "[w]here the files and records conclusively show that the prisoner is entitled to no relief, summary dismissal is

<u>**ORDER AFFIRMING MAGISTRATE JUDGE'S R&R**</u>

appropriate." <u>Raines v. U.S.</u>, 423 F.2d 526, 529 (4th Cir. 1970).

Moreover:

> If the petition be frivolous or patently absurd on its
> face, entry of dismissal may be made on the court's own
> motion without even the necessity of requiring a
> responsive pleading from the government.  In most cases,
> however, the better practice would be to require, at the
> very least, a responsive pleading so that United States
> attorneys may be afforded the opportunity to state the
> government's position and sometimes, as not infrequently
> occurs, to admit the merit or veracity of some or all of
> the petitioner's assertions.

<u>Id.</u>

In this case, the magistrate judge recommended summary
dismissal without requiring the government to respond to Linton's
petition.  While the Fourth Circuit in <u>Raines</u> found that such
disposition may not be the preferred practice, the Court finds it
to be appropriate here.  All of Linton's § 2255 claims relate to
the alleged ineffective assistance of his attorney, Samuel Davis,
stemming from either private interaction with Linton or the failure
to make certain arguments on the record.  Nothing about Linton's
claims indicates that the government could provide additional
insight into their merit.

Linton argues, however, that adjudication of at least some of
his claims on collateral attack, particularly those going to the

**ORDER AFFIRMING MAGISTRATE JUDGE'S R&R**

validity of his guilty plea, require an evidentiary hearing.  In

support, he relies on the Supreme Court's decision in <u>Marchibroda</u>

<u>v. U.S.</u>, 368 U.S. 487 (1962), which vacated and remanded for

further proceedings the decision of the Sixth Circuit affirming a

district court's order denying a petitioner's § 2255 petition

without conducting a hearing.

At issue in <u>Marchibroda</u> was the petitioner's claim that his

guilty plea had been involuntary because it was allegedly based on

promises made to him by an Assistant United States Attorney

relating to the total period of incarceration faced by the

petitioner. <u>Id.</u> at 490.  In rendering its decision that summary

dismissal was procedurally improper, the Supreme Court looked to

the "detailed factual allegations" regarding the alleged promises

set forth in the petitioner's motion and supporting affidavit.  It

noted that the petitioner's allegations and the government's

response gave rise to factual questions that "related primarily to

purported occurrences outside the courtroom and upon which the

record could, therefore, cast no real light." <u>Id.</u> at 494-495.

Accordingly, the Supreme Court found that, in making findings on

controverted issues of fact without notice and a hearing, "the

**ORDER AFFIRMING MAGISTRATE JUDGE'S R&R**

District Court did not proceed in conformity with the provisions of

28 U.S.C. s 2255 . . . ." Id. at 494.

In this case, Linton asserts, *inter alia*, that his attorney

was ineffective because Davis incorrectly advised him prior to

entering a plea to the distribution charge that he would face a one

to three year period of incarceration and showed Linton a statute

to corroborate that advice. Further, Davis failed to move to

withdraw Linton's plea when asked to do so by the defendant.

(Linton Petition at 32.) While the Court acknowledges that these

claims present questions of fact regarding out of court conduct, it

finds that the extensive record belies Linton's assertions. Thus,

for reasons more fully explained below, the Court finds that the

record supports summary dismissal of Linton's petition.

**b. Ineffective Assistance of Counsel Claims**

**Strickland Standard**

As in the magistrate judge's review before it, the Court's

review of Linton's Sixth Amendment ineffective assistance of

counsel claims is guided by the conjunctive, two-prong analysis

outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance
> was so defective as to require reversal of a conviction
> . . . has two components. First, the defendant must show
> that counsel's performance was deficient. This requires

showing that counsel made errors so serious that counsel
was not functioning as the "counsel" guaranteed the
defendant by the Sixth Amendment. Second, the defendant
must show that the deficient performance prejudiced the
defense. This requires showing that counsel's errors were
so serious as to deprive the defendant of a fair trial,
a trial whose result is reliable.

In order to satisfy Strickland's deficiency prong, a
petitioner must demonstrate the objective unreasonableness of his
attorney's performance. Id. at 688. Further, "[j]udicial scrutiny
of counsel's performance must be highly deferential." Id. at 689.
Thus, a reviewing court with the benefit of hindsight must not
second-guess those decisions of counsel which, given the totality
of the circumstances at the time of trial, "might be considered
sound trial strategy." Id. (quoting Michel v. State of La., 350
U.S. 91, 101 (1955)).

In order to satisfy Strickland's prejudicial effect prong,
"the defendant must show there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the
proceeding would have been different. A reasonable probability is
a probability sufficient to undermine confidence in the outcome."
Id. at 694. Further, Strickland makes clear that either prong of
its test for ineffective assistance of counsel may be analyzed
first, and thus, if no prejudice is shown by a petitioner, a court

need not analyze counsel's performance. Id. at 697; Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir.), cert. denied, 506 U.S. 885 (1992).

Moreover, a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea, as Linton does in several of his claims here, is subject to an even higher burden regarding the prejudice prong: he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhard, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988), cert. denied 488 U.S. 843 (1988).

**I. Counsel's Failure to File Petition for Writ of Certiorari**

Attached to Linton's petition are letters he received from his attorney outlining Davis's intention to file a timely petition for writ of certiorari to the Supreme Court on Linton's behalf.[11] Davis filed no such petition, however, and failed to inform Linton of

---

[11] Linton provides three letters from Mr. Davis to support his claim. First, on September 17, 2001, Mr. Davis wrote to Linton that "we are preparing a Petition for Reargument and will file a Writ of Certiorari to the United States Supreme Court on your behalf." Next, in a November 16, 2001 letter, Mr. Davis advised Linton that the Fourth Circuit had denied the petition for rehearing, and that "[w]e have ninety (90) days from the date of this Order to file a Petition for Writ of Certiorari to the United States Supreme Court. We intend on filing that Writ and we will keep you posted." Finally, after the applicable time period for filing had passed, on March 8, 2002, Mr. Davis advised Linton that based on his reading of Apprendi v. New Jersey, 530 U.S. 466 (2000) and United States v. Promise, 255 F.3d 150 (4th Cir. 2001), he determined that a petition for writ of certiorari would have no merit and thus, did not file one.

that fact until after the applicable time period to do so had
passed.

In rejecting Linton's ineffective assistance claim on these
grounds, the magistrate judge relied on the Supreme Court's
decision in <u>Wainwright v. Torna</u>, 455 U.S. 586 (1982), which
provides that "a criminal defendant does not have a constitutional
right to counsel to pursue . . . applications for review in this
Court." <u>Id.</u> at 587.  Accordingly, with no right to counsel, a
petitioner could not be deprived of the effective assistance of
counsel by his attorney's failure to file a timely petition for
discretionary review. <u>Id.</u> at 587-588.  While <u>Torna</u> and its progeny
remain good law, that line of cases does not address the impact of
the CJA on an appointed counsel's duty to seek certiorari review
for his or her clients.  It is on this point that Linton objects.

In <u>Wilkins v. United States</u>, 441 U.S. 468 (1979)(per curiam),
the United States Supreme Court granted a petitioner's *pro se*
petition for writ of certiorari, filed seventeen (17) months out of
time, where the petitioner's court-appointed appellate counsel
failed to timely file such a petition despite the petitioner's
request that he do so.  <u>Id.</u> at 470.  In so ruling, the Supreme
Court relied on the provisions of the CJA, and the Solicitor

**ORDER AFFIRMING MAGISTRATE JUDGE'S R&R**

General's interpretation of provisions of 18 U.S.C. § 3006A, "to mean that a person whose federal conviction has been affirmed is entitled to a lawyer's help in seeking certiorari here." Id. at 469. Accordingly, the Court granted the petitioner's untimely petition for certiorari review, vacated the appellate judgment, and remanded the case "to the Court of Appeals so that a timely petition for certiorari to review the appellate judgment can be filed." Id. at 470.

In Proffitt v. United States, 549 F.2d 910 (4th Cir. 1977), the Fourth Circuit Court of Appeals reached a similar result after reviewing a petitioner's claims under the Fourth Circuit's plan to implement the CJA. There, the pro se petitioner appealed a district court's denial of his §2255 motion to vacate, and among the claims raised by the petitioner in his § 2255 motion was an ineffective assistance of counsel claim alleging that his appointed appellate counsel had "failed to inform him of the result of his appeal to [the Fourth Circuit] and of his right to petition the Supreme Court for certiorari." Id. at 912. The Fourth Circuit vacated the part of the district court's decision denying that claim because it found, "[t]he district court incorrectly held there was no such duty on the part of his attorney." Id.

**ORDER AFFIRMING MAGISTRATE JUDGE'S R&R**

In so finding, the appellate court looked to the plain
language of its plan implementing the CJA. At the time of
decision, that plan provided in pertinent part:

> If the judgment of this Court is adverse to the
> defendant, appointed counsel shall inform the defendant
> in writing, of his right to petition the Supreme Court of
> the United States for a writ of certiorari. If requested
> by the defendant to do so, he shall prepare for filing in
> the Supreme Court and transmit to the defendant, a timely
> petition for such a writ.

Id. (citing Plan of the United States Court of Appeals for the
Fourth Circuit in Implementation of the Criminal Justice Act of
1964, Part VI(B)(2) (1977)). Given those requirements, the Fourth
Circuit remanded that part of the petitioner's case concerning
counsel's failure to file a petition for certiorari review to
determine whether the petitioner had been denied the effective
assistance of counsel. Proffitt, 549 F.2d at 913.

A finding that appointed appellate counsel failed to comply
with the duty to file a Petition for Writ of Certiorari under the
CJA, however, is not dispositive of whether that attorney was
constitutionally ineffective for not doing so under the Strickland
standard. That is so because, even if appellate counsel's failure
to file for certiorari review in accord with the CJA is considered
objectively unreasonable, a petitioner must still "show prejudice

from counsel's failure to advise him of [and pursue] the possibility of certiorari review." United States v. Eisenhardt, 10 F.Supp.2d 521, 523 (D.Md. 1998).

In Eisenhardt, a district court for the District of Maryland summarily dismissed a petitioner's § 2255 petition, including a claim for ineffective assistance of counsel based on an appointed attorney's failure to inform the petitioner of his right to petition the Supreme Court for certiorari review. Id. at 522-523. On the petitioner's "Amended Motion for Reconsideration", the district court examined the Fourth Circuit's decision in Proffitt in light of the Supreme Court's subsequent decision in Austin v. United States, 513 U.S. 5 (1994). The district court noted that "[i]n Austin[], the Supreme Court criticized the Fourth Circuit CJA Plan, upon which Proffitt was based, insofar as it requires counsel to file, on defendant's request, a petition for writ of certiorari in all cases . . . . If anything, Austin stands for the proposition that discretionary review is not a matter of right and that very different considerations are involved from those connected with an appeal as of right." Eisenhardt 10 F.Supp.2d at 523 (emphasis in original).

**ORDER AFFIRMING MAGISTRATE JUDGE'S R&R**

The district court in Eisenhardt then went on to analyze whether the petitioner had shown prejudice "from his counsel's failure to advise him of the possibility of *certiorari* review." Id. It noted that the only issue addressed by the Fourth Circuit on direct appeal was whether the district court had abused its discretion in not granting a downward departure at sentencing. Id. As such, the district court found no prejudice because a certiorari petition "would undoubtedly have been doomed to failure." Id.

Like the court in Eisenhardt, this Court finds that Linton was not prejudiced by Davis's failure to file a timely petition for writ of certiorari with the Supreme Court. First, Linton's direct appeal to the Fourth Circuit raised no significant constitutional issues. Rather, that appeal challenged this Court's relevant conduct determination and its imposition of a sentencing enhancement for Linton's aggravated role in the offense. In its *per curiam* opinion, the Fourth Circuit affirmed Linton's sentence without oral argument, finding the challenged actions of the district court to be clearly supported by applicable law.

Moreover, beyond the issues raised in the direct appeal filed by Davis on Linton's behalf, the Fourth Circuit also entertained Linton's *pro se* supplemental brief raising additional issues on

appeal. It addressed those issues in its *per curiam* opinion by stating, "[w]e have considered the issues raised by Linton in his pro se supplemental brief and find them to be without merit." Accordingly, none of the issues raised by Linton on direct appeal to the Fourth Circuit presented the kind of significant constitutional questions likely to warrant certiorari review by the Supreme Court.

Importantly, the Court's conclusion is guided by more than conjecture. Following the running of the applicable time period to file for certiorari review in Linton's case, on February 4, 2003, Linton filed a *pro se* petition with the Supreme Court. That petition was docketed[12], and subsequently denied by the Supreme Court. Thus, it is clear from the record that Linton's claims of error on direct appeal were published to the Supreme Court. Moreover, this Court finds it telling that, unlike the case in Wilkins, where the Supreme Court granted the petitioner's *pro se* petition for a writ of certiorari though it was filed 17 months out

---

[12] On April 12, 2002, Linton forwarded a "request for an extension of time within which to file an out-of-time petition for a writ of certiorari" to the Supreme Court. By letter dated May 3, 2002, the Clerk of the Supreme Court responded to Linton's request by letter which stated in pertinent part:

> If the decision from which you are appealing is from a criminal judgment you may promptly submit a properly prepared petition for a writ of certiorari which will be docketed with a notation as to its untimeliness.

of time, the Supreme Court flatly denied Linton's similarly out of

time *pro se* petition without further explanation. (See Doc. No.

238).

Accordingly, under Strickland, the Court finds no prejudice

to the petitioner from his appointed appellate attorney's failure

to timely file a petition for writ of certiorari to the Supreme

Court on his behalf.[13]   Thus, the Court **AFFIRMS** the magistrate

judge's R&R and **DISMISSES WITH PREJUDICE** Linton's ineffective

assistance of counsel claim on this ground.

### ii. Counsel's Challenge to USSG § 3C1.1 Enhancement

Linton argues that his attorney was constitutionally

ineffective for failing to properly defend against the Court's

application of an obstruction of justice sentencing enhancement

based on its finding of witness intimidation.  He asserts that his

counsel should have argued that there was no evidence of scienter

---

[13] Further, the Court finds the Supreme Court's decision in Roe v. Flores-
Ortega, 528 U.S. 470 (2000), and the Fourth Circuit's decision in United States
v. Witherspoon, 231 F.3d 923 (4th Cir. 2000), to be inapplicable, as both of
those decisions concern counsels' failure to pursue direct appeal at the circuit
court level.  As noted, in this case, Linton's attorney failed to pursue
discretionary review from the Supreme Court after the Fourth Circuit affirmed
Linton's conviction and sentence.  Thus, Linton was not altogether deprived of
an appellate proceeding. See Flores-Ortega, 528 U.S. at 483 (finding a
presumption of prejudice when a defendant is completely denied the assistance of
counsel during a critical stage of a judicial proceeding, such as an appeal
altogether).

**ORDER AFFIRMING MAGISTRATE JUDGE'S R&R**

sufficient to support the enhancement, and that by not doing so,

rendered ineffective assistance.

Pursuant to USSG § 3C1.1, a two-level sentencing enhancement

is warranted if:

> (A) the defendant wilfully obstructed or impeded, or
> attempted to obstruct or impede, the administration of
> justice during the course of the investigation,
> prosecution or sentencing of the instant offense of
> conviction, and (B) the obstructive conduct related to
> (I) the defendant's offense of conviction and any
> relevant conduct; or (ii) a closely related offense . .
> . .

Given the significant credibility concerns regarding witness

testimony raised during the December 8, 2000 hearing, the Court

instructed the Probation Officer assigned to Linton's case to

undertake an investigation into witness intimidation. On

December 19, 2000, the Court and parties learned the results of

that investigation, which revealed, *inter alia*, that witness

Merrick Smith had been contacted by both Linton and Von Gaines in

mid-November, 2000, and told to "do what he can with regard to his

testimony." Further, while Smith advised that he did not perceive

the call to be a direct threat, it made him uncomfortable.

Accordingly, given the results of the Probation Officer's

investigation, when considered in conjunction with the doubtful

witness testimony proffered during the December 8, 2000 hearing,

ORDER AFFIRMING MAGISTRATE JUDGE'S R&R

the Court found that Linton and others had engaged in witness intimidation sufficient to support an obstruction of justice enhancement under USSG § 3C1.1. Moreover, the record from the December 19, 2000 hearing clearly indicates that Davis argued against the enhancement on behalf of his client. In stark contrast to Linton's assertion that Davis failed to argue that scienter was lacking, Davis specifically argued that "there is no evidence that he attempted to intimidate or threaten anyone based on I think the very careful report that has been done and the investigation that has been done." (12/19/00 Hearing Transcript at 15.) In addition, Davis argued that Linton and Von Gaines only contacted witnesses that he had been unable to reach. Thus, although the Court was unpersuaded, the record is clear that Linton's attorney did argue against the imposition of an obstruction of justice enhancement for witness intimidation.

Accordingly, the Court **AFFIRMS** the magistrate judge's R&R and **DISMISSES WITH PREJUDICE** Linton's ineffective assistance of counsel claim on this ground.

### iii. Counsel's Presentence Advice

Linton argues that, prior to his entering a plea, Davis advised him that he faced only 1-3 years in prison, and that

relevant drug conduct would not be significant since he was pleading to an aiding and abetting in distribution charge and not to a conspiracy charge. The magistrate judge found Linton's ineffective assistance claim on these grounds without merit because, after a full Rule 11 hearing in which the statutory maximum sentence, among other considerations, was explained to Linton, he entered what the Court found was a knowing and voluntary plea. Further, at no time during the extended sentencing proceedings did Linton ever tell the Court that Davis had improperly advised him he would face a limited sentence of 1-3 years.

In his objections, Linton admits that he stated in open court at the Rule 11 hearing that he understood his sentence would be governed by the sentencing guidelines and that those guidelines had been explained to him. He argues, however, that such admissions are of no moment because it was Davis's promise that induced his plea, and the Court should, at the least, conduct an evidentiary hearing to determine whether such advice was given. See Fontaine v. United States, 411 U.S. 213 (1973)(*per curiam*)(finding that § 2255 calls for a hearing on petitioner's allegations of a coerced plea when plea was alleged to have been "induced by a combination of

**ORDER AFFIRMING MAGISTRATE JUDGE'S R&R**

fear, coercive police tactics, and illness, including mental illness"). Moreover, Linton argues that, given Davis's misstatement of his potential sentence, his assistance was objectively unreasonable and prejudice can be presumed from the significant sentencing disparity that resulted.

In Marchibroda, the Supreme court vacated and remanded for further proceedings the decision of the Sixth Circuit Court of Appeals affirming a district court order that had denied a § 2255 petition without a hearing when that petition contained detailed factual allegations that challenged the voluntary nature of the defendant's plea.  One year later, however, in United States v. Davis, 319 F.2d 482, 484-485 (6th Cir. 1963), the Sixth Circuit Court of Appeals commented on what it believed the proper reach of Marchibroda to be:

> We do not construe Marchibroda[], upon which appellant relies, as requiring a hearing in all cases in which a factual issue is raised by appellant's motion to vacate. In the Marchibroda case, the transcript of the arraignment shows that the District Judge accepted a plea of guilty from the defendant, who was represented by counsel, without questioning the defendant about it being entered voluntarily, free from any threats or coercion or promises of any kind.

Indeed, when the full protections of a Rule 11 hearing are present, "the representations of the defendant, his lawyer, and the

prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  That is because "Rule 11 is intended to produce a complete record of the factors relevant to the voluntariness of the guilty plea and, thereby, to forestall subsequent controversy as to voluntariness." Raines, 423 F.2d at 530.

In this case, Linton had the full protection of a Rule 11 hearing.  On September 10, 1997, he appeared with counsel and pled guilty to the aiding and abetting charge in Count Two of the indictment.  In his objections to the R&R, Linton admits that the Court "pointedly" advised him that his sentence would be determined by the mandatory guidelines, that he "understood" as much, and that those guidelines had been explained to him. (Doc. No. 278 at 13.) Moreover, the record is clear that it was only after the Court advised Linton 1) of the statutory maximum sentence applicable to his count of conviction, 2) that it was not bound by any stipulation or recommendation agreed to or made by the parties, 3) that it would not know his sentence until a PSR was prepared and reviewed, and 4) that Linton would not be able to withdraw his plea

should his sentence ultimately be more severe than expected, that Linton stated he understood all the consequences of pleading guilty and that he was in fact guilty of the offense of conviction. (Doc. No. 54.)  Only then did the Court find that Linton had entered a knowing and voluntary plea. Id.  While this does not end the analysis of Linton's ineffective assistance of counsel claim, it underscores the "formidable barrier" Linton must overcome.

In his petition Linton alleges that Davis told him that a plea to the distribution charge in Count Two of the indictment would expose him to no more than a 3 year sentence, and that Linton would be sentenced based on the stated drug quantity in that count[14]. Linton's petition and objections note that, had this been true, doubt would then have been cast on the knowing and voluntary nature of his plea, see Raines, 423 F.2d at 529, despite the fact that the Court thoroughly advised him of the consequences of pleading guilty at the Rule 11 hearing.  The extensive record in this case, however, belies Linton's assertion and conclusively illustrates that he entered a knowing plea, uncoerced by any conversations he may or may not have had outside the courtroom with Davis.

Following the entry of his plea, Linton absconded from justice and remained a fugitive for more than two and one-half years.  In

---

[14] 0.24 grams

his first appearance before this Court after being located by the
marshals and taken into federal custody, Davis did not appear on
Linton's behalf.  Rather, two other attorneys, Mr. Timperio and Mr.
Benninger, appeared for Linton at the October 30, 2000 hearing.  As
noted by the magistrate judge in the R&R, during that hearing
Linton engaged the Court in a long colloquy and at no time stated
that Davis had promised him a certain sentence or that his attorney
had stated he would be limited to certain relevant conduct.
Instead, the transcript makes clear that what Linton was unclear
about were the specifics of the presentence report, which the Court
determined had not been properly reviewed with the defendant by his
attorneys before this sentencing hearing.  Accordingly, the Court
continued Linton's sentencing for more than a month to ensure that
when Linton returned he would have no question about the
information, including the guideline calculation provided by the
Probation Officer in the PSR, and that the defense would have had
adequate time to prepare objections to those recommendations.

On December 8, 2000, when Linton returned to court, the Court
questioned him about his preparedness and understanding.  To wit:

> The Court:
>     I want to make sure that you are aware that anytime
> during these proceedings you may request a recess to
> consult with your attorneys at length.  Obviously you can
> consult with them here in the courtroom; but if you need

a longer recess, you are certainly entitled to that as
well.  I don't want to proceed at anytime if you become
confused or uncertain about what is going on.   All
right.[sic]

Linton:
     Yes.

The Court:
     Do you understand?

Linton:
     Yes, I do, Your Honor.

****

The Court:
     Have you reviewed the presentence report the
probation officer prepared with your attorneys?

Linton:
     I have, Your Honor.

The Court:
     All right.  You are aware then that on your behalf
your team of lawyers has filed three objections to the
presentence report. All right.  Are you aware of that?

Linton:
     Yes.

(12/8/00 Hearing Transcript at 4-5.)  The Court than addressed the

specific nature of those objections, which included strenuous

challenges to the Probation Officer's recommended relevant conduct

calculation.  At no time during the December 8, 2000 hearing, which

focused entirely on testimony relating to Linton's disputed

historical drug conduct, did Linton advise the Court that he had

been promised he would be sentenced based solely on the 0.24 grams of crack cocaine sold in Count Two of the indictment.

Similarly, much of the December 19, 2000 hearing also focused on the parties respective positions on the relevant conduct issue. Again, Linton never asserted that his attorney had promised him a three year sentence or had induced his plea by guaranteeing a relevant conduct total of 0.24 grams.

In all, following the entry of his plea, which he now claims was induced by the representations of his attorney, Linton appeared before this Court three times in hearings spanning several hours of time in open court and totaling over 250 pages of transcribed proceedings without ever once alleging that Davis, who was only one of three lawyers representing him at sentencing, had promised him a sentence limited to no more than three years if he pled guilty to Count Two. Put simply, Linton's claim is patently incredible from the face of the record, and therefore, the Court **AFFIRMS** the magistrate judge's R&R and **DISMISSES WITH PREJUDICE** Linton's ineffective assistance of counsel claim on this ground.

### iv. Counsel's Failure to Seek Drug Retesting

Linton argues that Davis should have had the physical evidence in the case retested after learning of testing irregularities at

ORDER AFFIRMING MAGISTRATE JUDGE'S R&R

the West Virginia State Police Forensic Laboratory.[15]  Further, he

asserts that, by not seeking available retesting, Davis rendered

constitutionally ineffective assistance.

Linton has already litigated the issue of drug retesting

several times in this case, before both this Court and the Fourth

Circuit.[16]  Further, he pled guilty to aiding and abetting the

distribution of "crack" cocaine, and the vast majority of relevant

conduct attributed to him at sentencing resulted from historical as

opposed to physical evidence.  Moreover, in both prior testimony

and testimony at sentencing, a cadre of witnesses familiar with

crack cocaine associated Linton with the drug. There is no evidence

that Linton was prejudiced in any way when the physical drug

evidence in his case was not retested.[17]

---

[15] In a letter dated September 19, 2000, Davis was notified by the then United States Attorney for the Northern District of West Virginia of "evidence of certain inconsistencies in the process in which drug-related evidence has been tested and analyzed by the Drug Section of the West Virginia State Police Forensic Laboratory."  (See Doc. No. 165.)

[16] See e.g., Doc. No. 164 – "Notice and Petition to Have U.S. Attorney and West Virginia State Police Forensic Laboratory Reveal the Proceedures [sic] or Process Used in Testing the Substance Allegedly Seized from the Defendant and Supply a Sample for Independent Chemical Analysis"; Doc. No. 175 – "Notice and Petition for Reconsideration" or Notice of Appeal of same; and Linton's pro se petition for emergency relief to the Fourth Circuit on appeal.

[17] The Fourth Circuit Court of Appeals reached a similar conclusion when it denied Linton's pro se, emergency petition to have the drug evidence in his case retested.  In its per curiam opinion affirming the district court, the Fourth Circuit noted in a footnote that "[i]n light of Linton's guilty plea to crack distribution and failure to challenge the drug type below, we do not find that the petition should be granted." (Doc. No. 180 at n.*).

Accordingly, the Court **AFFIRMS** the magistrate judge's R&R and **DISMISSES WITH PREJUDICE** Linton's ineffective assistance of counsel claim on this ground.

### v. Counsel's Challenge to Historical Drug Conduct

Linton argues that Davis rendered ineffective assistance by failing to adequately challenge the reliability of "extra-judicial sworn statements and Grand Jury testimonies" of the government's witnesses against him.   Like Magistrate Judge Kaull, the Court disagrees.

On direct appeal, the Fourth Circuit noted that "[t]o resolve disputed issues at sentencing, the district court may consider any relevant information that has 'sufficient indicia of reliability to support its probable accuracy.'" (Doc. No. 180 at 3 (quoting USSG § 6A1.3)).   That court found that this Court's review of Linton's codefendants' PSRs constituted a proper method to "test the credibility of the witnesses testifying under oath." Id.

On December 19, 2000, during the final phase of Linton's sentencing, both defense counsel and the government provided a chart outlining what they believed to be the appropriate relevant conduct calculation.   The Court then engaged in a painstaking review of all the information before it, including witnesses' grand jury testimony, debriefing statements, sentencing testimony, and

the probation officer's independent determination in Linton's PSR.
The record reflects that, throughout this process, Davis repeatedly
challenged the government's assertions and the Court's
determinations as to relevant conduct.[18] Moreover, many of those
challenges related directly to the issue of witness credibility and
the reliability of information provided by those witnesses at any
time, not just at sentencing, which is exactly what Linton asserts
Davis failed to adequately do. By way of example, one
representative exchange with the Court went as follows:

> Mr. Davis:
>     With all due respect, the government is now trying
> to say because Mr. Linton has asked that we have a
> sentencing hearing, that that somehow is – that because
> he is exercising his rights, that that somehow should be
> held against him . . . . And now Mr. McWilliams is
> saying, well, you have to look at the debriefings and
> then their testimony on the stand, but the Court also
> logically has to say, well, what if they are lying here.
> If they are lying before me, for whatever reason, how can
> I be certain that they weren't lying in the past. All I
> can really be certain of is what I sentenced them to . .
> . . [The government has] an obligation to prove this
> case. He is the one that called those witnesses before
> you. He is the one that called those witnesses.
>
> The Court:
>     Yes, I remember that.
>
> Mr. Davis:

---

[18] Further, it is noted that prior to any sentencing proceedings, defense
counsel filed written objections to the Probation Officer's relevant conduct
calculation.

ORDER AFFIRMING MAGISTRATE JUDGE'S R&R

He called them. And if he doesn't know what they
are going to say or if he doesn't know that he can
believe them and he calls those witnesses before you,
that's on them. That's on the government . . . .
[J]udge, I mean, if we are going to summarize about these
other witnesses, it is hard for you to believe anything
they say at anytime.

(12/19/00 Hearing Transcript at 61-62.)

In his objections to the magistrate judge's R&R, Linton
asserts that Davis knew of certain information that would have
impacted the credibility of some of the witness testimony and other
evidence relied on by the Court. The record, however,
conclusively establishes that Davis aggressively challenged the
reliability of the historical drug conduct attributed to Linton by
the government's witnesses. While those challenges may not have
been made on every ground Linton now raises, the Court will not
second guess those decisions of counsel at sentencing, which, given
the Court's highly deferential review, may clearly be considered
sound trial strategy. Strickland, 466 U.S. at 689.

Accordingly, the Court **AFFIRMS** the magistrate judge's R&R and
**DISMISSES WITH PREJUDICE** Linton's ineffective assistance of counsel
claim on this ground.

**vi. Counsel's Failure to Challenge Alleged Breach of Plea
Agreement**

**ORDER AFFIRMING MAGISTRATE JUDGE'S R&R**

Linton argues that Davis improperly failed to challenge the government's "breach" of the plea agreement between the parties when the government produced evidence of drug weight beyond the 0.24 grams of crack cocaine listed in the count of conviction. As noted by the magistrate judge, the plea agreement between the parties contained no relevant conduct stipulation. Further, while Linton argues that the drug weight evidence unfairly exceeded his expectations of what the government would produce because earlier versions of proposed plea agreements contained stipulations to less weight, his arguments fail to take into account the impact of his flight the government's ability to develop evidence against him during the two and a half years he was a fugitive.

By the time Linton was sentenced, his codefendants had been fully processed through the criminal justice system, and the government had the benefit of many varied sources of information when arguing about Linton's relevant drug conduct. Thus, there can be no question that it was reasonably foreseeable that during the sentencing proceedings in 2000 the government would be able to account for more drug weight than it might have in 1998.

Further, Linton's attempted reliance on U.S. v. Gilchrist, 130 F.3d 1131 (3rd. Cir. 1997), to support his claim is misplaced. In Gilchrist, the Third Circuit found that the district court's

imposition of a term of supervised release not contemplated by a binding plea agreement entered pursuant to Federal Rule of Criminal Procedure 11(e)(1)(C) constituted a breach of that plea agreement. Here, the parties entered no binding plea agreement under the Rules, and the agreement that was entered contained no stipulation as to relevant conduct. Because the government could not breach the plea agreement on the grounds asserted by Linton, Linton's attorney could not render ineffective assistance for failing to challenge the government's actions.

Accordingly, the Court **AFFIRMS** the magistrate judge's R&R and **DISMISSES WITH PREJUDICE** Linton's ineffective assistance of counsel claim on this ground.

### vii. Counsel's Failure to Move for Withdrawal of Plea

Nowhere in the extensive record following his plea does Linton, or do any of his attorneys, move the Court to allow Linton to withdraw his plea. Further, at no time over the almost two months spanning Linton's sentencing proceedings did he ever indicate that he had requested Davis to make such a motion. Had Linton truly wished to withdraw his plea, he had repeated opportunities to do so.

ORDER AFFIRMING MAGISTRATE JUDGE'S R&R

Thus, for the reasons stated in Part VI(b)(iii), *supra*, the Court **AFFIRMS** the magistrate judge's R&R and **DISMISSES WITH PREJUDICE** Linton's ineffective assistance claim on this ground.

### c. **Blakely/Booker** Claim

The Fourth Circuit Court of Appeals has settled the issue of Booker's retroactivity in this circuit. In <u>United States v. Morris</u>, 429 F.3d 65, 72 (4th Cir. 2005), the court held:

> The rule announced in <u>Booker</u> is a new rule of criminal procedure, but it is not a watershed rule. Accordingly, the rule is not available for post-conviction relief for federal prisoners . . . whose convictions became final before <u>Booker</u> (or <u>Blakely</u>) was decided.

Further, a conviction is final if "the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition of certiorari had elapsed . . . ." <u>Teague v. Lane</u>, 489 U.S. 288, 295 (1989).

In this case, the Supreme Court denied Linton's *pro se* petition for writ of certiorari and Linton's sentence became final on March 24, 2003, well before the Supreme Court's <u>Blakely</u> and <u>Booker</u> decisions. Accordingly, because the rule announced in <u>Booker</u> does not apply retroactively to this case, the Court **AFFIRMS** the Magistrate Judge's R&R and **DISMISSES WITH PREJUDICE** the <u>Blakely/Booker</u> claim brought by Linton in his supplemental motion.

### VII. **Conclusion**

**ORDER AFFIRMING MAGISTRATE JUDGE'S R&R**

For the foregoing reasons, the Court **AFFIRMS** Magistrate Judge Kaull's Report and Recommendation and **DISMISSES WITH PREJUDICE** Linton's 28 U.S.C. § 2255 petition from the Court's docket.

The Clerk is directed to transmit a copy of this Order to counsel of record and all appropriate agencies, and mail a copy of this Order via certified mail, return receipt requested, to the *pro se* petitioner.

DATED: March 23, 2007


/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE